CHAMBERS OF
JOSE L. LINARES
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S.
COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**

<u>LETTER OPINION</u>

October 20, 2011

<u>VIA CERTIFIED MAIL AND ELECTRONIC FILING</u>

Jamila Davis
Register No. 59253-053
Danbury Correctional Institution
33 ½ Pembroke Road
Danbury, CT 06811

Brenda Rickard
Register No. 27278-050
Federal Correction Institution
Route 37
Danbury, CT 06811

Donna D. Gallucio, Esq.
United States Attorney's Office
970 Broad Street
Newark, NJ 07102

  Re: <u>United States of America v. Jamila Davis</u>
     <u>Criminal Action No. 05-482 (JLL)</u>

Dear Counsel and Parties:

  This matter comes before the Court by way of Defendant Jamila Davis's and co-Defendant Brenda Rickard's joint motion for a new trial, pursuant to Federal Rule of Criminal Procedure 33. For the reasons set forth below the motion is DENIED.

## BACKGROUND

On June 14, 2005, Jamila Davis ("Davis") was indicted on one count of conspiracy to commit bank fraud pursuant to Title 18 U.S.C. § 371 and six separate counts of bank fraud pursuant to Title 18 U.S.C. § 1344. The indictment charged that Davis and others, including Brenda Rickard ("Rickard"), participated in a scheme to specifically intend to defraud federally insured financial institutions by submitting falsified loan applications to various banks. The targets of the scheme included Lehman Brothers and Commerce Bank North. Davis and Rickard ("Defendants") were found guilty on all counts after a jury trial in this Court concluded on September 20, 2007. On July 16, 2008, Davis was sentenced to a term of imprisonment of 151 months and ordered to pay restitution in the amount of $12,487,227.51; Rickard received a term of imprisonment of 121 months.

On November 4, 2010, Davis filed this motion for a new trial based on newly discovered evidence. On February 24, 2011 this Court agreed to let co-defendant Rickard join this motion.[1] As a condition of joinder, however, the Court stipulated that it would no longer accept any additional submissions in support of or in opposition to this motion. Accordingly, in the opinion below, the Court only takes into consideration those materials filed prior to February 24, 2011. The Court additionally notes that since joinder was granted, this decision equally applies to both Davis and Rickard.

## LEGAL STANDARD

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). When considering a motion for a new trial based on newly discovered evidence, the Court must apply a five-part test. See United States v. Iannelli, 528 F.2d 1290, 1292 (3d Cir. 1976). Defendants must satisfy all five requirements for their motion to be granted. United States v. Saada, 212 F.3d 210, 216 (3d Cir. 2000). First, the evidence must in fact be newly discovered, i.e., discovered since trial. Second, facts must be alleged from which the court may infer diligence on the part of the movant. Third, the evidence relied on must not be merely cumulative or impeaching. Fourth, the evidence must be material to the issues involved. Finally, the evidence must be of such a nature that it would probably produce an acquittal at a new trial. Id. The movant must overcome a "heavy burden" in meeting these requirements. United States v. Ashfield, 735 F.2d 101, 112 (3d Cir.1984). In addition, "[a]lthough it may be advisable for a district court" to continue its analysis after finding that one factor has not been met, "such an analysis of the remaining factors is not required

---

[1] The Court notes that Rickard's motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 was denied by this Court on August 15, 2011. See CM/ECF 10-4089, No. 25. Davis filed a separate 28 U.S.C. § 2255 motion which is still pending before this court. See CM/ECF 10-4964.

inasmuch as the failure of one element is a sufficient basis to deny a motion for a new trial."
United States v. Jasin. 280 F.3d 355, 365 (3d Cir. 2002).

The decision to grant a motion for a new trial is within the discretion of the trial court. See Saada, 212 F.3d at 215. It will not be overturned by a reviewing court unless the trial court has abused its discretion. See Gov't of Virgin Islands v. Lima, 774 F.2d 1245, 1250 (3d Cir. 1985).

## ANALYSIS

### 1) Defendants' Proffered Evidence is Not Newly Discovered Within the Meaning of Rule 33.

The first prong "addresses whether the proffered evidence is 'newly discovered' – that is, whether it was known to the defendant at trial." Jasin, 280 F.3d at 362. This includes both actual and constructive knowledge that defendant and/or her counsel may have had. See United States v. Bujese, 371 F.2d 120, 125 (3d Cir.1967) ("It is equally well settled that evidence is not 'newly discovered' when it was known or could have been known by the diligence of the defendant or his counsel, and that such evidence is not sufficient to grant a new trial.") Defendants argue that newspaper articles, court documents, and government findings regarding Lehman Brothers' bankruptcy are "newly discovered" because they were written after she was convicted. (Petitioner's Corrected Memorandum of Law at 22.)[2] They further claim that this evidence could not have been discovered earlier because "it was not until Lehman Brothers [sic] collapse because of fraudulent activities that the . . . information was exposed." (Id.) The Government contends, however, that Defendants' evidence is not "newly discovered" because information about Lehman Brothers' subprime loan business was known to Defendants at the time of their trial. (Gov't's Brief at 16-17.)

It is the substance – not the source – of evidence that concerns the Court when making the judgment whether it is "newly discovered." See Jasin, 280 F.3d at 367 ("Jasin fails to understand that whether the defendant was aware of the substance of the testimony at the time of trial . . . is the determining factor under the first prong of the . . . test.") Thus the question with respect to the first requirement is whether Defendants knew or should have known about the information that her documents reveal. See Iannelli, 528 F.2d at 1293; see also United States v. Saunders, 192 F.2d 409, 409 (D.C. Cir. 1951).

Defendants have provided over 100 pages detailing the complex issues surrounding the collapse of Lehman Brothers and the broader financial crisis of 2008. (See Appendix In Support of Motion for New Trial Pursuant to Fed. R. Crim. P. 33; Exhibit A to Addendum to Petitioner's Motion for a New Trial Pursuant to Fed. R. Crim. P. 33.) They have included material on the

---

[2] Hereinafter Petitioner's Corrected Memorandum of Law In Support Of Motion For New Trial Pursuant to Fed. R. Crim. P. 33 will be cited as "Def's Brief."

former head of the bank's global real estate group; the whistle blower who raised concerns about Lehman Brothers' audits; a lawsuit involving the purchase of Lehman Brothers' Mortgage Backed Securities by the State of New Jersey; and articles and government reports concerning the bank's failure to manage the risks associated with its loans. (Id.) Though these documents touch on a wide range of topics, Defendants rely on the information concerning Lehman Brothers' "fraudulent activities related to mortgage approvals" to support their motion for a new trial. (Def's Brief at 17, 19.) In particular, Defendants highlight Lehman Brothers' "liar loans" and the "strong incentives" they created to "provide false information on loan applications." (Def's Brief at 20.) (internal quotations omitted)

Though Defendants' materials are comprehensive, they are not newly discovered evidence within the meaning of Rule 33. "[E]vidence known but unavailable at trial does not constitute 'newly discovered evidence' within the meaning of Rule 33." Jasin, 280 F.3d at 362. Defendants admit that they were already aware of Lehman Brothers' slipshod approval practices for loans. As they write, "Petitioner's defense at trial was 'materiality,' and the Petitioner contends that . . . the bank knowingly and willfully approved and participated in [their] scheme, knowing that the loans in question contained fraudulent information." (Def's Brief at 16.) They go further to recount testimony at trial which revealed that the paperwork submitted and approved by Lehman Brothers for a construction loan contained errors, including the "gigantic red flag" of a conflicting set W-2's. (Id. at 6.) Furthermore, it was admitted that Aurora Loan Services, Lehman Brothers' subsidiary, was "being sued [in a separate lawsuit] for failing to accurately evaluate the creditworthiness of mortgages before they approved and issued loans." (Id. at 8.) Clearly Defendants were aware of loose practices concerning loan approvals. Indeed they targeted Lehman Brothers because of its lax policies regarding appraisals. Though Defendants – like many others – may not have known the extent to which these lending practices imperiled Lehman Brothers, it cannot be said that they were unaware that the bank accepted loan applications with fraudulent information when it was central to their defense at trial. Given Defendants' prior knowledge of Lehman Brothers' allegedly fraudulent business practices, Defendants are unable to satisfy the first requirement of the five-part test.

2) Defendants' Proffered Evidence Could Have Been Known Through the Exercise of Diligence.

For similar reasons as outlined under the first prong, Defendants also fail the second requirement of the five-part test. In the Third Circuit, "[e]vidence is not 'newly discovered' if it . . . could have been known by the diligence of the defendant or his counsel,' " and "facts must be alleged from which the court may infer diligence on the part of the movant." United States v. Cimera, 459 F.3d 452, 461 (3d Cir. 2006) (citations omitted). Despite the fact that the articles on which Defendants rely were not written until after they were convicted, the substance of them, as it relates to the approval of certain types of loans, were known by Defendants at trial. Indeed Defendants admit that their counsel "attempted to prove" that Aurora Loan Services "participated in the fraud" but simply "did not have access" to information about Lehman Brothers until after it collapsed. (Def's Brief at 16.) Defendants, however, had over 18 months

between the initial indictment and the start of the trial to perform their due diligence. Although it is debatable whether reasonable diligence could have unearthed the evidence now presented within the 18 month time-frame, Defendants were free to ask the Court for more time if needed. Thus, Defendants also fail to satisfy the second requirement of the five-part test.

3) Defendants' Proffered Evidence Is Merely Impeaching Within the Meaning of Rule 33.

The Third Circuit has held that the "correct" question to ask under this prong is whether the proffered evidence "strongly demonstrate[s] that critical evidence at the trial against the defendant was very likely to have been false." United States v. Quiles, 618 F.3d 383, 393 (3d Cir. 2010). In order for proffered evidence to pass this prong, there must be some "exculpatory connection" between the proffered evidence and the Defendants' criminal acts. Saada, 212 F.3d at 216.

Although Defendants present substantial evidence regarding the allegedly fraudulent approvals process for subprime loans at Lehman Brothers, this proffered evidence has no bearing on the critical evidence the government presented at trial. As the transcript demonstrates, the government's critical evidence at trial consisted largely of witness testimony describing the scheme to defraud financial institutions. Whether or not Lehman Brothers acted fraudulently in providing subprime mortgages is utterly unrelated to Defendants' criminal acts of specifically intending to defraud federally insured financial institutions by submitting falsified loan applications and likewise the evidence relied upon by the government to prove this. Accordingly, Defendants fail the third element of the five-part test.

4) Defendants' Proffered Evidence Is Not Material to the Issues Involved.

Defendants fail to satisfy the fourth element of the five-part test which requires that the proffered evidence be material to the issues involved. Defendants were convicted of defrauding financial institutions by submitting falsified mortgage applications. The proffered evidence, however, discusses "allegedly fraudulent activities related to mortgage approvals" for subprime mortgage applications at Lehman Brothers. (See Appendix In Support of Motion for New Trial Pursuant to Fed. R. Crim. P. 33; Exhibit A to Addendum to Petitioner's Motion for a New Trial Pursuant to Fed. R. Crim. P. 33.) Defendants, however, offer no evidence that mortgage approvals were fraudulent for non-supbrime loans. As was stated under oath at trial, the loans in question relating to Defendants were not subprime. As such, Defendants fail the fourth element.

5) Defendants' Proffered Evidence Would Probably Not Produce an Acquittal at a New Trial.

The fifth element of the five-part test requires that the newly discovered evidence be of such a nature that it would "probably produce an acquittal" at a new trial. Iannelli, 528 F.2d at 1292. It is the opinion of the Court that even if the proffered evidence were to pass the first four prongs of the five-part test, it would fail to probably produce an acquittal at a new trial.

As noted under the previous prong, Defendants fail to show how proffered evidence relating to subprime mortgage approvals at Lehman Brothers is material to their case when the mortgages they applied for were not subprime.  Additionally, Defendants were found guilty of committing bank fraud not only against Lehman Brothers but also against Commerce Bank North.  Defendants offer no evidence of fraudulent activity at Commerce Bank North and so the proffered evidence relating to Lehman Brothers is irrelevant.  Defendants thus fail to satisfy the fifth element of the five-part test.

## **CONCLUSION**

For the reasons set forth above, this Court, in its discretion, concludes that the "newly discovered" evidence offered by Defendants does not warrant a new trial in this matter. Accordingly, Defendants' motion is DENIED.

An appropriate Order accompanies this Letter Opinion.

Sincerely,

/s/ Jose L. Linares
Jose L. Linares
United States District Judge